AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>PIVITON PASTOR POSLIQUA GILER,<br>ALFREDO WLADIMIR JARAMILLO BAQUE and<br>EGAR ABDIEL HERNANDEZ BAILON.<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 17-6038-HUNT<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 27, 2016__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 46, United States Code, Section 70506(b) | Conspiracy to possess with the intent to distribute a controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503; all in violation of 46 U.S.C. § 70506(b). Pursuant to 46 U.S.C. § 70506(a), and 21 U.S.C. § 960(b)(1)(G), it is further alleged that this violation involved 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel P. Evans, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/17

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida

Patrick M. Hunt, United States Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Daniel Evans, being duly sworn, hereby depose and state the following:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (hereinafter "HSI"), and have been so employed since June 2001. I am responsible for conducting narcotics smuggling investigations involving the use of marine vessels. As a special agent with HSI, I have participated in numerous narcotics investigations, both international and domestic, involving physical and electronic surveillance and the control and administration of confidential sources. I have participated in the arrest and subsequent prosecution of numerous targets. I also have spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, methods and practices that drug traffickers use to further their drug trafficking operations and the most effective methods of investigating and dismantling drug trafficking organizations.

2. As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 19, 21, 31 and 46 of the United States Code.

3. The information contained in this Affidavit is submitted for the sole purpose of establishing probable cause to establish that Piviton Pastor POSLIGUA GILER, Alfredo Wladimir JARAMILLO BAQUE, and Egar Abdiel HERNANDEZ BAILON, violated Title 46, United State Code, Sections 70503(a) (1) and 70506(b), that is, knowingly and willfully conspiring to possess with intent to distribute five kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States.

4. As this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all of the information known to me and other law enforcement officers involved in this investigation. The facts and information contained in this Affidavit are based on my personal knowledge and observations, as well as upon information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation as well as my review of records, documents, and other physical items obtained during the course of this investigation.

5. On December 27, 2016, while on routine patrol, U.S. Coast Guard (USCG) assets detected a go-fast vessel in the Eastern Pacific Ocean, heading northbound, approximately 323 nautical miles (NM) south of the Mexico/Guatemala border and in international waters. USCG Cutter SHERMAN (SHE) was 18 NM north of the go-fast vessel's location and diverted to intercept. As USCG Cutter SHE closed in, it launched a helicopter and a small interceptor vessel. The helicopter arrived at the location of the go-fast vessel and reported a tarp over the middle section of the vessel, large packages visible in the forward section, and three male occupants. Shortly thereafter, the go-fast became dead in the water and the USCG interceptor vessel began to make its approach. Once on scene, the boarding team on the USCG interceptor vessel reported that packages were visible in the middle section of the go-fast, which were consistent with contraband wrapping due to their size and appearance. USCG SHE requested and was granted boarding of the go-fast to compel compliance pursuant to international law. The boarding team gained positive control of the go-fast without the use of force. A preliminary inspection by the boarding team revealed three Ecuadorian crew members, no flag flown, no registration documents, no registration number on the hull, no homeport

on the hull, and no name on the hull. In addition, when asked, none of the crewmembers admitted to being the captain of the vessel. However, an individual later identified as Piviton Pastor POSLIGUA GILER began to speak and the boarding team treated him as the captain of the go-fast. When asked, POSLIGUA GILER stated that the last port of call was Manta, Ecuador, but then asked the boarding officers for advice on whether to claim or not to claim a nationality for the vessel. Based on that information, USCG SHE directed the boarding team to treat the vessel as without nationality and to conduct a full law enforcement boarding. Shortly thereafter, the boarding team reported that two field narcotics tests performed on the on-board packages yielded positive results for cocaine. An Ion Scan test also returned positive results for the presence of cocaine on the surfaces of the vessel. As a result, USCG SHE was authorized to treat the crew as detainees, and the boarding team took possession of 20 packages which contained approximately 907 kilograms of suspected cocaine. The detainees claimed to be Ecuadorian and were further identified by their Ecuadorian government issued identification as: Piviton Pastor POSLIGUA GILER, Wladimir Alfredo JARAMILLO BAQUE, and Egar Abdiel HERNANDEZ BAILON. After completing the boarding, USCG SHE requested and was authorized to disembark the boarding team along with the detainees and the drug and non-drug evidence, and to sink the vessel as a hazard to navigation due to no suitable tow points.

6. On January 26, 2017, USCG transported the three (3) Ecuadorian crew members, a ten (10) kilogram representative sample of cocaine, and the non-drug evidence to the country of Panama were subsequently transferred Guantanamo Bay, Cuba by Drug Enforcement Administration (DEA) Special Agents. On the same date, DEA

transported the detainees and the drug and non-drug evidence from Guantanamo Bay to the Fort Lauderdale International Airport in Fort Lauderdale, Florida, where they were presented to the U.S. Customs and Border Protection for entry into the United States.

7. After Piviton Pastor POSLIGUA GILER, Wladimir Alfredo JARAMILLO BAQUE, and Egar Abdiel HERNANDEZ BAILON were paroled into the United States for prosecution in the Southern District Court of Florida, they were transferred to the custody of HSI Special Agents along with the drug and non-drug evidence.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Daniel P. Evans
Special Agent
Department of Homeland Security (HSI)

Subscribed and sworn to me
before this 27 day of January, 2017.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

4